# In the United States Court of Federal Claims

No. 06-741 T

(Filed: May 29, 2009)

```
*************************************
STRATEGIC HOUSING FINANCE       *
CORPORATION OF TRAVIS COUNTY,   *
                                *
            Plaintiff,          *       Motion to Alter or Amend Judgment;
                                *       RCFC 59(e); Standard Identical for
v.                              *       Motion for Reconsideration; RCFC 59(a)
                                *
THE UNITED STATES,              *
                                *
            Defendant.          *
*************************************
```

Wm. Mark Scott, Washington, DC, for plaintiff.

Jacob E. Christensen, United States Department of Justice, Washington, DC, for defendant. Mary M. Abate, of counsel.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is Plaintiff's Motion to Alter or Amend Judgment ("motion to amend"), filed pursuant to Rule 59(e) of the Rules of the United States Court of Federal Claims ("RCFC"). In its motion to amend, plaintiff Strategic Housing Finance Corporation of Travis County, an issuer of tax-exempt bonds, requests, among other things, that the court amend its February 27, 2009 decision dismissing plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), see Strategic Hous. Fin. Corp. of Travis County v. United States, 86 Fed. Cl. 518 (2009), to reflect that plaintiff's remittance of arbitrage rebate to the Internal Revenue Service ("IRS") under the provisions set forth in section 148(f) of the Internal Revenue Code ("IRC"), see 26 U.S.C. § 148(f) (2006), was a deposit, rather than a payment. In a March 10, 2009 order, the court requested that the government respond to plaintiff's motion to amend, see RCFC 59(b)(3), to which plaintiff was afforded an opportunity to reply. Briefing concluded on April 21, 2009. For the reasons discussed below, plaintiff's motion to amend is denied.

### I. STANDARD OF REVIEW

A motion to alter or amend judgment under RCFC 59(e) "seeks a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment." Maxus

Energy Corp. & Subsidiaries v. United States, 31 F.3d 1135, 1139 (Fed. Cir. 1994); see also White v. N.H. Dep't of Employment Sec., 455 U.S. 445, 450 (1982) (noting that Rule 59(e) of the Federal Rules of Civil Procedure "had a clear and narrow aim," and was adopted "to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment" (alteration in original)).  The United States Court of Federal Claims ("Court of Federal Claims") has previously applied the decisional law guiding a motion for reconsideration pursuant to RCFC 59(a) to an RCFC 59(e) motion to amend.  See Stockton E. Water Dist. v. United States, 76 Fed. Cl. 470, 472 (2007) (discussing whether the plaintiff asserted one of three grounds that warrant reconsideration under RCFC 59: (1) an intervening change in controlling law; (2) the availability of evidence not previously available; or (3) the need to prevent manifest injustice).  The United States Court of Appeals for the Federal Circuit has also utilized the standards set forth in Rule 59(a) to review Rule 59(e) motions.  Compare Parsons ex rel. Linmar Prop. Mgmt. Trust v. United States, 174 Fed. App'x 561, 563 (Fed. Cir. 2006) (discussing the three grounds that warrant reconsideration under RCFC 59: (1) an intervening change in controlling law; (2) the availability of evidence not previously available; or (3) the need to prevent manifest injustice), with Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1350 (Fed. Cir. 2000) (addressing a Rule 59(e) of the Federal Rules of Civil Procedure motion to amend judgment in a patent case and applying the law of the United States Court of Appeals for the Third Circuit, which instructed that a motion to amend judgment must rely on (1) an intervening change in controlling law, (2) the availability of evidence not previously available, or (3) the need to prevent manifest injustice).  Accordingly, the court is guided by the standard for reviewing a motion for reconsideration pursuant to RCFC 59(a) in its consideration of plaintiff's motion to amend.

In Northern States Power Co. v. United States, the court stated that an evaluation of a motion for reconsideration is "guided by the general understanding 'that, at some point, judicial proceedings must draw to a close and the matter deemed conclusively resolved . . . .'" 79 Fed. Cl. 748, 749 (2007) (quoting Withrow v. Williams, 507 U.S. 680, 698 (1993)).  Pursuant to RCFC 59(a), the court may grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States."  The "decision whether to grant reconsideration lies largely within the discretion of the district court," Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990), and courts must "consider motions for rehearing with exceptional care," Carter v. United States, 518 F.2d 1199, 1199 (Ct. Cl. 1975).

A motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Prati v. United States, 82 Fed. Cl. 373, 376 (2008) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)).  "Manifest" means "clearly apparent or obvious." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002).  The moving party "must support the motion by a showing of extraordinary circumstances which justify relief." Fru-Con Constr. Corp., 44 Fed. Cl. at 300.  "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the

necessity of allowing the motion to prevent manifest injustice." Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)). Therefore, a court "will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made[,] . . . all of which were carefully considered by the Court.'" Ammex, Inc., 52 Fed. Cl. at 557 (quoting Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993) (first & third alterations in original). A party "may not prevail on a motion for reconsideration 'by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed.'" Six v. United States, 80 Fed. Cl. 694, 697 (2008) (quoting Matthews, 73 Fed. Cl. at 525). Similarly, a motion for reconsideration "should not be based on evidence that was readily available at the time the motion was heard." Seldovia Native Ass'n v. United States, 36 Fed. Cl. 593, 594 (1996). Additionally, where a party seeks reconsideration on the ground of manifest injustice, "the moving party can only prevail if it demonstrates that the injustice from the case is 'apparent to the point of being almost indisputable.'" Shirlington Limousine & Transp., Inc. v. United States, 78 Fed. Cl. 27, 31 (2007) (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006)).

## II. PLAINTIFF'S MOTION TO AMEND[1]

Plaintiff asserts that the court's February 27, 2009 decision contains "at least four clear errors of law which directly lead to . . . manifest injustice . . . ." Pl.'s Mot. Alter Amend J. ("Mot.") 1; see also id. at 13 ("[B]ecause plaintiff's proceeding would not have been dismissed if these errors of law had not been relied upon, plaintiff was subject to a manifest injustice when this proceeding was dismissed for want of jurisdiction."); Pl.'s Reply Resp. United States Pl.'s Mot. Alter Amend ("Reply") 1 (alleging that the court "fails to adhere to the facts pled by plaintiff, resulting in multiple clear errors and manifest injustice"). Plaintiff attributes these alleged errors to the court's "fail[ure] to recognize the discrepancies between the Facts as Pled and Defendant's Asserted Position."[2] Reply 2. Plaintiff argues that its remittance of "an estimated and disputed amount" of arbitrage rebate "was a deposit both under existing case authority and even IRS standards of practice," and maintains that "[b]ecause of the background of its counsel . . . , plaintiff believed in 2006 and still believes today[] that it preserved the tax-

---

[1] For a recitation of the underlying facts in this case, see Strategic Hous. Fin. Corp. of Travis County, 86 Fed. Cl. at 520-26.

[2] Plaintiff characterizes its "Facts as Pled" position as follows: "that the jeopardy notice both accelerated the computation date and, separately, demanded an increase in the amount of the remittance based upon an unproven IRS revenue agent's examination theory." Reply 1-2. Plaintiff characterizes "Defendant's Asserted Position" as follows: "that the jeopardy notice did not demand a remittance of any increased amount but only acted to accelerate the rebate computation date." Id. at 2.

exempt status of its bonds by making a deposit of rebate with the U.S. Treasury."³  Mot. 3.  It requests that

> the Court's opinion should assume that the jeopardy notice demanded both an acceleration of the computation date and a specific modification to the assumptions used to determine the amount of plaintiff's arbitrage rebate remittance.  The Court's opinion should further assume that the demand by the IRS to change these assumptions was based solely on an unproven IRS revenue agent's examination theory and that the 'amount demanded by the jeopardy notice consisted only of the directions regarding the use of certain assumptions.  The Court's opinion should also assume that plaintiff remitted under protest so as to meet the terms of the jeopardy notice, to avoid the payment of penalties and interest, and to enable it an avenue to challenge the manner in which the IRS used the jeopardy provision and jeopardy notice to plaintiff's detriment.

Reply 12.

### A.  Plaintiff's Alleged First and Second Errors

Plaintiff argues that the court's decision "contains two clear errors of law when it first incorrectly assumes that a deposit of arbitrage rebate would fail to preserve the tax-exempt status of plaintiff's bonds and when it also incorrectly implies that plaintiff intended to make a *payment* of rebate to the IRS."  Mot. 3.  According to plaintiff, the court's first clear error of law resulted from its "holding that plaintiff's remittance was not a deposit."  Id. at 2; see also id. at 7 (arguing that the court erred by "assum[ing] that plaintiff was required to make a payment of arbitrage rebate in response to the jeopardy notice 'in order to preserve' the tax-exempt status of its bonds").  Plaintiff explains that the jeopardy provision, which was originally included in temporary arbitrage rebate regulations issued in 1989 and later became part of subsequent arbitrage rebate regulations, "was intentionally written to address certain 'black box' bond issues during the mid-1980's."⁴  Id. at 3.  Specifically, plaintiff asserts, the jeopardy provision was

---

³ Plaintiff states that its counsel "has worked in the tax-exempt bond sector for more than 23 years," including an "18+ year stint with the IRS," during which time he worked on the initial jeopardy provision "as part of the team of professionals who authored the 1989 temporary arbitrage rebate regulations."  Mot. 3 n.2.

⁴ Plaintiff proffers the following explanation of a black box transaction:

[P]roceeds of the bonds . . . would be placed in an escrow account for a period of between three to five years.  During this period, the proceeds would be invested at an arbitrage yield.  Part of the interest earned . . . would be used to pay interest to bondholders and the remaining portion would be used to build up equity in the escrow.  At the end of the escrow term . . . , there would typically be just enough

written to address multiple issuances of "'phony issue date' black box transactions," whereby promoters of black box transactions would ensure that their bonds were issued prior to the effective date of the Tax Reform Act of 1986. Id. at 5. According to plaintiff, the jeopardy provision was intended "to accelerate the date IRS enforcers could claim a rebate violation . . . ." Id. at 6. Plaintiff asserts that "[w]ith this additional background, it should be clear to the Court that the jeopardy provision does not mandate a 'payment' of arbitrage rebate." Id. (emphasis added). Rather, plaintiff argues that it simply "deposit[ed] funds with the U.S. Treasury to fulfill the terms" of the jeopardy notice it received. Id. at 7.

According to plaintiff, the court committed a second clear error of law "when it implies that plaintiff intended to make a payment of arbitrage rebate." Id. Plaintiff asserts that it believed that it "could remit rebate and file this suit as a means to challenge the constitutionality of the jeopardy provision and the validity of the jeopardy notice." Id.; see also id. at 8-9 (stating that plaintiff "remitted funds so as to create the opportunity to file this challenge to the jeopardy provision and jeopardy notice, to retrieve its remittance, and to foreclose the possibility that the IRS could raise a new argument due to its lack of remittance"). Thus, plaintiff argues that the court erred by implying that plaintiff "intended to make a payment of rebate in order to preserve the tax-exempt status of its bonds." Id. at 9.

Defendant argues that plaintiff already briefed and presented these arguments. Resp. United States Pl.'s Mot. Alter Amend J. ("Resp.") 4-6. It emphasizes that plaintiff's opposition to its motion to dismiss "contended, inter alia, that the remittance did not meet the dictionary definition of 'payment'; that it was an installment remittance of an indefinite, estimated amount; and that the IRS treats remittances of arbitrage as though they were deposits." Id. at 4 (citing Pl.'s Am. Mem. Opp'n Def.'s Mot. Dismiss Lack Subject Matter Jurisdiction ("Pl.'s Am. Opp'n") 17-18). It then indicates that during briefing, plaintiff "asserted that treatment of arbitrage remittances as deposits is 'fully consistent with the case law and the particular facts surrounding Plaintiff's remittance.'" Id. (quoting Pl.'s Am. Opp'n 19); see also id. at 6 (responding to plaintiff's alleged second error by quoting the same language). Defendant notes

---

> original principal and retained earnings . . . to fully pay all remaining principal and interest on the bonds. . . .
>
> The "trick" to a black box transaction was to make it difficult, if not impossible, for any of the escrowed proceeds to be used to actually fund the stated purpose of the bond issue (e.g., the construction of a low-income, multi-family housing project). In this way the bondholders would be assured of the return of their principal plus interest . . . . [T]he bondholders would own the highest quality of bonds because their bonds would be secured by highly-rated investments in the escrow (such as U.S. Treasury securities) and not a potentially risky project (e.g., the multi-family housing project), which had been the stated purpose of the issue.

Mot. 3-4.

that plaintiff also presented this argument related to its first alleged error in its sur-reply to defendant's motion to dismiss. Id. at 5; see also id. at 6 (indicating that "[p]laintiff simply reiterates these arguments [related to its alleged second error] in its pending motion."); Pl.'s Sur-Reply Def.'s Mot. Dismiss Lack Subject Matter Jurisdiction ("Pl.'s Sur-Reply") 4-10 (arguing that plaintiff's remittance of arbitrage rebate was a deposit).

Additionally, defendant challenges the relevance of plaintiff's "black box" discussion in its motion to amend. Resp. 5. Notwithstanding what it believes is "the total irrelevance of the 'black box' discussion to the interpretation of the regulation, and the complete absence of any authoritative support for plaintiff's contention," defendant maintains that this argument could have been, but was not, made during earlier briefing. Id. Furthermore, defendant asserts that plaintiff's "black box" discussion is not "newly discovered evidence" because

> [t]he supposed "authority" for the "black box" argument is "the background of [plaintiff's] counsel," who worked at [the] IRS in the tax-exempt bond area for "more than 23 years." Thus, even if the "black box" discussion were "evidence" (it is not), it was available to plaintiff at least as early as the initiation of the briefing on defendant's motion to dismiss, and should not be considered now.

Id. (alteration in original & citation omitted).

Plaintiff has not demonstrated that these two alleged errors warrant amendment or alteration of the court's February 27, 2009 decision. First, plaintiff argued thoroughly why its remittance should be characterized as a deposit during briefing on defendant's motion to dismiss. See, e.g., Pl.'s Am. Opp'n 31 ("Plaintiff's remittance should be treated as a deposit regardless of whether such remittance was a remittance of a tax or a remittance of a nontax amount . . . ."); Pl.'s Sur-Reply 6 (contending that the "IRS does not assess arbitrage rebate as a tax"), 8 (suggesting that "deposit treatment of unspecified and disputed installment amounts is . . . consistent with both existing case and administrative law"); Pl.'s Supplemental Mem. 10 ("Plaintiff's installment remittance of an estimated, unspecified amount of arbitrage rebate tax is properly treated as a refundable deposit of such amount."). The court considered plaintiff's arguments and ultimately declined to characterize plaintiff's payment of arbitrage rebate as a deposit. See Strategic Hous. Fin. Corp. of Travis County, 86 Fed. Cl. at 547-49. Consequently, it is clear that plaintiff seeks to relitigate this issue in its motion to amend in order to persuade the court otherwise. This, however, is not the purpose of a motion to amend. See supra Part I.

Second, plaintiff never presented its "black box" discussion during prior briefing and withheld doing so until after the court rendered a decision that was adverse to plaintiff. In fact, plaintiff concedes that it raises this "black box" discussion in its motion to amend for the first time. See Mot. 5 (indicating that this discussion constitutes "additional background"). "[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal." Bluebonnet Sav. Bank, F.S.B. v. United States, 466 F.3d 1349, 1361 (Fed. Cir. 2006); see also United States v. Ford Motor Co., 463 F.3d 1267,

1277 (Fed. Cir. 2006) (explaining that "[a]rguments raised for the first time in a reply brief are not properly before this court" and that "[i]t is unfair to consider an argument to which the government has been given no opportunity to respond"); Norman v. United States, 429 F.3d 1081, 1091 n.5 (Fed. Cir. 2005) (adhering to the rule that arguments raised for the first time in a reply brief are not properly before the court); Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (stating that raising an issue "for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration"); Goulding v. United States, 929 F.2d 329, 333 (7th Cir. 1991) (indicating that arguments presented post-trial and post-decisional briefing are deemed waived because they should have been made "at a much earlier stage in these proceedings"); Ironclad/EEI v. United States, 78 Fed. Cl. 351, 358 (2007) (noting that "under the law of this circuit, arguments not presented in a party's principal brief to the court are typically deemed to have been waived" and explaining that "courts are constrained to find, '[a]s a matter of litigation fairness and procedure,' that arguments not addressed in moving briefs have been waived" (quoting Novosteel SA, 284 F.3d at 1274 (alteration in original))). Furthermore, plaintiff has not indicated that any evidence that may support its "black box" discussion was unavailable to it at the time the parties engaged in briefing related to defendant's motion to dismiss.[5] In fact, at no point in its motion to amend does plaintiff assert that previously unavailable evidence is now available. Just as a motion for reconsideration should not be based upon evidence that was readily available at the time the motion was heard, Seldovia Native Ass'n, 36 Fed. Cl. at 594, so, too, should plaintiff not be permitted in a motion to amend to rely upon readily available evidence that it did not present previously. The court therefore declines to consider this discussion and any evidence in support thereof.

More significantly, even if evidence supporting plaintiff's "black box" discussion was not readily available during earlier proceedings, that evidence is ultimately not relevant. The court's February 27, 2009 decision addressed whether plaintiff, in order to recover an overpayment of arbitrage rebate, was required to file a refund claim with the IRS pursuant to 26 U.S.C. § 7422(a) before initiating a lawsuit in the Court of Federal Claims. The court determined that arbitrage rebate was encompassed by the "any sum" language contained in 26 U.S.C. § 7422(a), which provides, in relevant part:

> No suit or proceeding shall be maintained in any court for the recovery of . . . any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in

---

[5] Indeed, plaintiff's counsel recites activities that occurred over twenty-five years ago in support of plaintiff's position. Counsel was presumably aware of these activities at the time of briefing, particularly given his professional experience. See Mot. 3-6 (discussing "black box" bond issues during the "mid-1980's," the Tax Reform Act of 1986, and temporary arbitrage regulations issued in 1989 and 1992); supra note 3.

pursuance thereof.

Because plaintiff did not file a refund claim, the court concluded that it lacked subject matter jurisdiction under United States Supreme Court precedent. See Strategic Hous. Fin. Corp. of Travis County, 86 Fed. Cl. at 535-46. Neither plaintiff's "black box" discussion nor characterizing plaintiff's remittance of arbitrage rebate as a "deposit" cures this jurisdictional defect, a fact that plaintiff virtually ignores in its motion to amend.[6]  As such, plaintiff has not demonstrated that the alleged first and second errors constitute a manifest injustice that requires the court to amend or alter its February 27, 2009 decision.

### B. Plaintiff's Alleged Third Error

Plaintiff states that the court committed a "third clear and grave error of law when it states that 'plaintiff's remittance cannot be withdrawn at any time because doing so would convert its bonds into arbitrage bonds.'" Mot. 9.  Plaintiff claims that "[a] jeopardy notice is not intended to act as a means to collect rebate . . . ." Id.  According to plaintiff, the IRS's jeopardy notice subjected it to an acceleration of its remittance of rebate as a result of "an unproven examination theory that it could not refute." Id.  It admonishes the court for failing to "take evidence on the revenue agent's theory or the validity of the jeopardy notice" and instead "hold[ing] that it was within the sole discretion of the Commissioner to accelerate the payment of rebate."[7] Id.; see also id. (stating that the court's decision "fails to indicate whether the

---

[6] Instead, plaintiff contends:

[I]t is clear that these errors, which led to the erroneous dismissal of plaintiff's cause of action, were harmful, not harmless, errors.  Plaintiff, for instance, would not have otherwise been dismissed under RCFC 12(b)(6).  Plaintiff fully refuted each of defendant's arguments in its RCFC 12(b)(6) motion, and, in addition, the exhaustion requirement does not apply to the return of deposits.  Therefore, absent the erroneous dismissal under RCFC 12(b)(1), the proceeding would not have been otherwise dismissed.

Reply 10 (citations omitted).  The court notes that it denied as moot defendant's motion to dismiss for failure to state a claim upon which relief can be granted, having determined that it lacked subject matter jurisdiction.  See Strategic Hous. Fin. Corp. of Travis County, 86 Fed. Cl. at 519-20, 553.

[7] Plaintiff states: "[T]he Court's opinion does not include a finding with respect to the merits of the IRS revenue agent's position. . . . [A]bsent further findings, the Court's opinion includes a clear and grave error of law when it states that the return of plaintiff's rebate deposit would cause its bonds to be treated as taxable obligations." Mot. 11.  Again, the court notes that its February 27, 2009 decision addressed whether it possessed subject matter jurisdiction, which is "an inflexible matter that must be considered before proceeding to evaluate the merits of a

Commissioner's field agents had the additional authority to demand a variance in the [underlying] facts on which the amount of such remittances are determined"). Furthermore, plaintiff states that "as previously briefed, the withdrawal of the remittance does not violate the terms of the jeopardy provision or jeopardy notice." Id. at 11 (emphasis added).

Defendant contends that these arguments "simply expand[]" on arguments plaintiff previously asserted. Resp. 7; see also id. ("Plaintiff disputes the Court's determination that withdrawing the arbitrage remittance would cause the bonds to become taxable to the bondholders. This issue was addressed in plaintiff's second principal brief on the motion to dismiss."). In fact, plaintiff concedes that it presented similar arguments to the court, noting that it previously briefed whether the withdrawal of the remittance violates the terms of the jeopardy provision. See Mot. 11; see also Pl.'s Sur-Reply 9 (contending that plaintiff was "a bit mystified" by defendant's assertion that "the return of Plaintiff's remittance as an immediately refundable deposit will result in Plaintiff's Bondholders being taxed on their interest income"), 9-10 (requesting "a return of its deposit," which "will simply put the parties back in the same positions they were in prior to the IRS's mailing of the presumptively-invalid Jeopardy Notice").

Additionally, plaintiff argues in its motion to amend that "the rebate 'due' in 2006 was zero and the withdrawal of the entire $267,400[.00] over-remittance will not impact the tax-exempt status of the bonds." Mot. 11 (emphasis added). However, plaintiff previously presented a contrary position, indicating that it "remitted an amount in excess of the amount it computed as being due and owing as its installment remittance. Even though Plaintiff was required to remit only 90 percent of the amount computed, or $240,669.60, Plaintiff intentionally remitted 100 percent of this amount, or $267,444.00." Pl.'s Am. Opp'n 21 (emphasis added). Plaintiff cannot use its motion to amend to relitigate an issue that it previously addressed, regardless of whether its current arguments could have been raised previously or are inconsistent with its prior position. As such, plaintiff has not demonstrated that the alleged third error constitutes a manifest injustice that requires the court to amend or alter its February 27, 2009 decision.

### C. Plaintiff's Alleged Fourth Error

According to plaintiff, the court committed a "fourth clear error of law when it finds that plaintiff bore the burden of calculating an IRS 'proposed deficiency' or 'proposed amount' in response to the jeopardy notice." Mot. 11; Reply 7 (claiming manifest error of fact and law based upon the court's "find[ing] that plaintiff was required to compute the amount of its actual remittance). But see Reply 6 (stating that the court's "opinion fails to address whether plaintiff bore the responsibility to make both calculations"). Plaintiff states:

> As pled and previously briefed, the fact that the IRS's suspect jeopardy notice did not specify a dollar amount owed would normally be an enormous factor in favor

---

case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)) (emphasis added).

> of deposit treatment. The Court's opinion finds this fact irrelevant based solely on the conclusion that plaintiff bore the burden of calculating its 2006 rebate liability.

Mot. 11-12 (citation omitted & emphasis added). Additionally, plaintiff notes that it engaged the services of outside experts to perform two separate calculations, see id.; Reply 6, and that the second calculation "takes into account an unsupported IRS examination theory," Mot. 12. Plaintiff maintains that it should not have been responsible for calculating the amount of arbitrage profit based upon the factors required by the IRS's jeopardy notice. Id. at 13. Furthermore, plaintiff states that the court "should conclude that the failure of the IRS to compute and state a certain amount in the jeopardy notice is a significant factor in favor of treating plaintiff's remittance as a deposit." Reply 7.

As defendant notes, plaintiff's motion to amend effectively concedes that plaintiff previously raised these arguments. Resp. 8. Indeed, plaintiff addressed this issue in its sur-reply: "IRS field agents are not empowered to unilaterally change these rules to increase the amount of arbitrage rebate due from State and local governments." Pl.'s Sur-Reply 17; see also id. at 18 (contending that the IRS field office "demanded an immediate remittance . . . without providing any evidence or support" and arguing that defendant "fails to account for the breadth of the Jeopardy Provision and the actions of the IRS field office in issuing the Jeopardy Notice"). The court considered these arguments and determined, based upon 26 U.S.C. § 148(f), that

> [n]othing in section 148(f) requires that the IRS calculate the amount of arbitrage rebate an issuer owes. Rather, that duty rests with the issuer itself, which is instructed to make the calculations and payments according to the applicable regulations. Thus, it was plaintiff's responsibility, rather than the responsibility of the IRS, to calculate the amount of arbitrage profit.

Strategic Hous. Fin. Corp. of Travis County, 86 Fed. Cl. at 548 (citation omitted). Again, plaintiff's motion to amend merely reasserts arguments that it previously presented to the court, and this basis does not warrant granting such a motion. See supra Part I. Furthermore, as stated previously, even if the court were to find that plaintiff was not required to compute the amount of deficiency in response to the jeopardy notice, this does not remedy the jurisdictional defect presented in this case, viz., that plaintiff did not file a refund claim with the IRS pursuant to 26 U.S.C. § 7422(a) before initiating its lawsuit.

### D. Plaintiff's Claim of Manifest Injustice Based Upon the Doctrine of Res Judicata

Plaintiff argues that the court's February 27, 2009 decision is "infect[ed]" by errors and inconsistencies, Reply 10, and that plaintiff is foreclosed, based upon the principles of res judicata, from raising the same issues in a subsequent proceeding, id. at 11; see also id. at 12 ("Because of the res judicata implications of the Court's opinion, the Court's opinion manifests severe injustice to plaintiff."). The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could

have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). In order to prevail on a claim of res judicata, the party asserting the bar must prove that: (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); accord Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000). Here, again, the court did not reach the underlying merits of plaintiff's claim, did not issue a final judgment on the merits, and did not dismiss plaintiff's amended complaint with prejudice. See Scott Aviation v. United States, 953 F.2d 1377, 1378 (Fed. Cir. 1992) ("A dismissal with prejudice effectively renders an adjudication on the merits. Without jurisdiction, the Claims Court cannot presume to dismiss the complaint with prejudice."); Strategic Hous. Fin. Corp. of Travis County, 86 Fed. Cl. at 554 (dismissing plaintiff's amended complaint pursuant to RCFC 12(b)(1) and thus without prejudice); supra note 7. Therefore, plaintiff is not, contrary to its claim, foreclosed from "hav[ing] a realistic opportunity to be heard on its methodology arguments at the IRS administrative review process." Reply 12. As such, plaintiff will not incur manifest injustice on account of the court's February 27, 2009 RCFC 12(b)(1) dismissal without prejudice of its amended complaint.

### III. CONCLUSION

In its motion to amend, plaintiff does not assert that an intervening change in the controlling law occurred or that previously unavailable evidence has become available. Instead, plaintiff argues that the court must amend or alter its February 27, 2009 decision in order to prevent manifest injustice. Although plaintiff claims that the four alleged errors raised in its motion to amend "form the core analysis for the court's opinion that plaintiff's remittance was not a deposit," Reply 10, it does not show how these alleged errors caused injustice that is "'apparent to the point of being almost indisputable.'" Shirlington Limousine & Transp., Inc., 78 Fed. Cl. at 31 (quoting Pac. Gas & Elec. Co., 74 Fed. Cl. at 785). Even if these alleged errors were corrected or rectified, plaintiff still could not invoke the court's jurisdiction because it failed to file a refund claim pursuant to 26 U.S.C. § 7422(a). Accordingly, plaintiff's motion to amend is **DENIED**. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge